### CANTON COTTON MILLS v. UNITED STATES.

### No. 46847.

United States Court of Claims.

Jan. 9, 1951.

Joseph B. Brennan, Atlanta, Ga., Sutherland, Tuttle & Brennan, and Jones, Williams & Dorsey, all of Atlanta, Ga., on the briefs, for plaintiff.

Elizabeth B. Davis, Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff seeks a refund of income tax paid for 1936. It kept its books and prepared its tax returns by the accrual method of accounting. Plaintiff claims that certain deductions disallowed by the Commissioner of Internal Revenue were ordinary and necessary business expenses deductible in 1936 under Section 23(a) of the Revenue Act of 1936, 49 Stat. 1648, 1658, 26 U.S.C.A. § 23(a).[1]

Plaintiff claims that it should have been allowed to deduct $105,609.75 which it reimbursed to its customers in 1936. The reimbursements arose in the following manner. Plaintiff, which operates a cotton mill, was subject to a processing tax imposed by the Agricultural Adjustment Act of 1933, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. Plaintiff paid the tax through the month of March 1935 but secured an injunction against its collection thereafter. Beginning in August 1935 plaintiff incorporated into its contracts with its customers for goods subject to the processing tax, a standard clause which provided that if the processing tax should be invalidated by the Supreme Court, the plaintiff would, with respect to goods invoiced within nine-

---

1. "Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *."

ty days prior to the determination of invalidity, credit on the buyer's account the amount of tax refunded to plaintiff or that plaintiff should have been relieved from paying. Plaintiff's sales were made at a stated flat price and neither in the contracts of sale nor in the invoices was the processing tax shown as a specific or distinct item. Nevertheless, it was anticipated that the price of denim, which was plaintiff's principal product, would decline in the event of a decision invalidating the processing tax. The standard tax clause was adopted to protect the mills' customers against this eventuality. This 90-day period was specified because that was the period normally required by the customers of the mills to process the fabric into garments and sell to *their* customers.

At the end of 1935 it was uncertain whether the Supreme Court would declare the tax invalid and when it would render a decision on the matter. On January 6, 1936, in the case of United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, the tax was held invalid. Following this decision the plaintiff, during 1936, reimbursed to its customers $105,609.75 of the amounts paid by them for goods sold and delivered by plaintiff in 1935.

Of the total amount of reimbursements, $79,309.26 was paid or credited to customers in fulfillment of legal obligations under the standard tax clause. Since the institution of this suit the Commissioner of Internal Revenue has allowed this amount as a deduction from gross income in 1936 and appropriate refund of tax has been made.

The remainder of the reimbursements, $26,300.49, was paid or credited by plaintiff to its customers under contracts that did not require plaintiff to reimburse the amount of the processing tax. These contracts either did not contain the standard tax clause, or, if they did contain it, the goods, although invoiced and shipped within the 90-day period, were goods on which plaintiff had paid the tax because it had processed them prior to the date on which it had secured the injunction. Plaintiff was under no legal liability to make reimbursements on these contracts and it was so advised by counsel.

Plaintiff considered the possibility of identifying the goods on which it had paid the tax and refusing to make reimbursements with respect to such goods. Plaintiff recognized, however, that its method of identifying these goods might be questioned and that its customers might not be satisfied by the explanation that no reimbursement was due on particular items because they were identified as tax-paid. Moreover, it was known that plaintiff had been able, through injunction, to avoid paying the tax after March 31, 1935. In the case of goods shipped within 90 days prior to the Butler decision, under contracts entered into before the standard tax clause had been adopted, plaintiff felt, after full consideration of the matter, that it ought to treat these customers the same as the others. Plaintiff's decision in both cases was influenced by the position taken by its competitors in the cotton-textile industry. The denim industry is highly competitive and plaintiff is a very small part of it. When plaintiff found that the other denim mills were making reimbursements on all goods shipped within the 90-day period without regard to whether they were tax-paid or were shipped under contracts that did not contain the standard tax clause, it decided that, from a business standpoint, it had to do likewise. Plaintiff's officers felt that they were compelled to do so in order to avoid inciting the ill-will of their customers and thereby losing some of them. The record shows that their decision was reasonably justified by the circumstances existing at the time and was an exercise of good business judgment.

The Government contends that, notwithstanding the circumstances, these reimbursements of $26,300.49 were not ordinary and necessary business expenses. It concedes, however, that if they *are* ordinary and necessary business expenses, then they were proper accruals for the year 1936. This was not the theory relied on by the Commissioner; he assessed the deficiency and denied the claim for refund

solely on the ground that the reimbursements were not proper accruals for 1936. This position seems inconsistent with I. T. 3090, 1937—1 Cum.Bull. 78, which indicated that the Income Tax Unit regarded such reimbursements as deductible in the year in which the reimbursements were made. Although it is perhaps not without significance that until this suit was instituted no one in the Government took the position that the reimbursements were not deductible at all, that fact can hardly be considered decisive of the merits of the Government's present contention. As defendant points out, it may defend this suit on a ground different from that relied on by the Commissioner. Swift Manufacturing Co. v. United States, 12 F.Supp. 453, 81 Ct.Cl. 932.

The case of Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, is the basis for the Government's admission that the rebates, if deductible at all, are deductible in 1936. The Supreme Court held in that case that rebates such as those made by plaintiff in the instant case [2] were not deductible in 1935, the year in which the sales were made. The Security Flour Mills decision was also the ground for the Commissioner's decision, after this suit was instituted, to allow the reimbursements of $79,309.26, which plaintiff was legally obligated to make, as a deduction for 1936. In the Security Flour Mills case the Court decided only that the reimbursements were not deductible in the year of sale; although the decision of the Circuit Court of Appeals said that they *were* deductible in the years in which the reimbursements were made, 10 Cir., 135 F.2d 165, 168, this was dictum; the question whether they were deductible at all was not discussed by the Supreme Court. If there is an implication in the Supreme Court's opinion that the reimbursements are deductible in the years when they were made, it is neither strong nor plain enough to justify this court's avoiding discussion of the merits of the Government's defense.

Plaintiff was not obligated by contract to refund the $26,300.49. It did so as a matter of good business and in order to keep the business and the good will of its customers. Good will is generally regarded, under certain circumstances, as a capital asset. But the fact that good will may enter into an expenditure does not always prevent the deduction of such expenditure as a current business expense. The Government argues that these refunds were nondeductible capital expenditures rather than business expenses. Defendant relies on Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, where it was held that expenses incurred in acquiring good will were more analogous to capital outlays than to ordinary and necessary business expenses. The benefits of a good will are realized over a period of years; consequently, expenditures made to build it up and to acquire it are logically classed as capital outlay. But good will, once acquired, requires periodic cultivation if it is to continue to produce benefits; and it is, therefore, equally logical to class necessary expenses incurred currently to protect and nurture existing good will as current business expenses rather than capital expenditures. The courts have recognized this logical distinction. The rule of Welch v. Helvering, supra, does not apply to expenditures to retain or protect existing good will. Dunn & McCarthy, Inc., v. Commissioner of Internal Revenue, 2 Cir., 139 F.2d 242; Perkins Bros. Co. v. Commissioner of Internal Revenue, 8 Cir., 78 F. 2d 152. See, also, the recent decisions in Commissioner of Internal Revenue v. Surface Combustion Corp., 6 Cir., 181 F.2d 444, and United States v. E. L. Bruce Co., Inc., 6 Cir., 180 F.2d 846. In the case of Houston Natural Gas Corp. v. Commissioner of Internal Revenue, 4 Cir., 90 F.2d 814, certiorari denied, 302 U.S. 722, 58 S.Ct. 43, 82 L.Ed. 557, one of the cases relied on

2. The Supreme Court's opinion does not clearly show that the repayments were voluntarily made. This is brought out, however, in the opinion of the Tenth Circuit, 135 F.2d 165, which was affirmed, and in the opinion of the Board of Tax Appeals, 45 B.T.A. 671, which the Circuit Court of Appeals reversed.

by defendant, the Court did not allow the taxpayer to deduct the expenses of employing solicitors to obtain new customers and maintain the good will of the old. However, the court intimated that if the taxpayer had sustained the burden of showing what part of the expenditures were made to retain old customers, that much would have been deductible as a current business expense.

Plaintiff refunded the $26,300.49 in the exercise of good business judgment and in order to protect itself against loss of customers. It follows, therefore, that this was not a capital outlay but was a current expense of doing business. If it was also an ordinary and necessary expense of doing business, then plaintiff is entitled to recover. The Government does not contend that it was not necessary within the meaning of the statute. See Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Levitt & Sons, Inc., v. Nunan, 2 Cir., 142 F.2d 795; A. Harris & Co. v. Lucas, 5 Cir., 48 F.2d 187. But the Government does insist that it was not ordinary.

To be ordinary, payments need not be be habitual or normal in the sense that the taxpayer will have to make them often. However, a payment made "without legal obligation or the lighter obligation imposed by the usages of trade or by neighborly amenities" is not ordinary, but is "in a high degree extraordinary." Welch v. Helvering, supra, 290 U.S. at page 114, 54 S.Ct. at page 9. Here, there was no legal obligation; but the obligation "imposed by the usages of trade" and the requirements of good business was compelling. As a matter of commercial reality plaintiff had no alternative to following the course taken by its competitors. The realities of the situation cannot be ignored. Such payments may not have been ordinary before the Butler decision, but they speedily became ordinary; in fact they were general in the trade. Under the circumstances existing at the time, the refunds of $26,300.-49 were ordinary and necessary expenses of doing business.

Plaintiff also claims that it should have been allowed to deduct $15,000 which it accrued and paid to its attorneys in 1936. The Government concedes that this was an ordinary and necessary expense of doing business but insists that it was not a proper accrual for 1936. These attorneys had been retained in 1934 to handle plaintiff's floor stock and processing tax matters. A $500 retainer was agreed upon and paid at that time; additional compensation was left for later determination, but it was understood that a fair fee would be paid for services rendered. The amount of $15,000 was agreed to by plaintiff and its attorneys in February 1936 as payment for legal services rendered to date of payment. These services included those rendered in 1934, 1935, and 1936, in connection with litigation relating to the processing taxes; advice with respect to distribution to customers of recovered funds; and by way of retainer in connection with claims to be prosecuted for refund of floor stock and processing taxes already paid to the Government.

The Government also contends that the amount of the fee attributable to the services rendered in 1934 and 1935 is not a proper deduction for 1936. As the fees to be paid were not determined and fixed until 1936, this contention is not convincing. Old Colony Trust Associates v. Hassett, D.C., 55 F.Supp. 629.[3] Moreover, it is doubtful if plaintiff could have deducted any amount for attorneys' fees in 1935; no fee arrangements had been made by the end of that year and the mere fact that some services had been performed would not establish an accrual. Crown Cork & Seal Co., Inc., v. United States, D.C., 4 F. Supp. 525, affirmed, 2 Cir., 73 F.2d 997. The general rule, as deduced from United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, is that an expense accrues in the year in which all the events occur which determine the liability and fix

3. Other aspects of the District Court's judgment in this case were reversed, on taxpayer's appeal, in 1 Cir., 150 F.2d 179.

its amount. If the liability is contingent or its amount unsettled, the expense does not accrue. The Government as well as the taxpayer is denied "the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount." Security Flour Mills v. Commissioner of Internal Revenue, supra, 321 U.S. at pages 286–287, 64 S.Ct. at page 599. See also Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733, and Commissioner of Internal Revenue v. Blaine, Mackay, Lee Co., 3 Cir., 141 F.2d 201.

At the end of 1934 and at the end of 1935 plaintiff's liability to its attorneys was not contingent in the sense that only later events could determine whether anything at all was due. But the amount was unsettled and indefinite. There was no basis on which the amount due could have been estimated within reasonable limits; the expense, therefore, had not accrued. See Holland, Accrual Problems in Tax Accounting, 48 Mich.L.Rev. 149, 168–169. The attorneys had been retained in 1934 to handle plaintiff's floor tax and processing tax matters. The scope and extent of these matters could not have been determined prior to the Butler decision. At the close of 1935 no one knew what disposition the Supreme Court would make of that case or when its decision would be rendered. In these circumstances plaintiff could not reasonably attempt to determine the amount of its liability to its attorneys at the end of 1935. The amount of the fee was not in fact determined until February 1936. The obligation became final and definite in amount at that time, and the expense was a proper accrual for that year.

It is the opinion of the court that the Commissioner of Internal Revenue improperly disallowed deductions of $41,300.49 ($26,300.49 plus $15,000) for 1936, and that plaintiff is entitled to recover the resulting overpayment of taxes with interest as provided by law.

Judgment will be entered for plaintiff for the amount due upon the filing by the parties of a stipulation showing the amount of the overpayment, together with dates of payment, for the purpose of computing interest. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and WHITAKER, Judges, concur.