## KNAPP BROTHERS SHOE MANUFACTURING CORPORATION

v.

## The UNITED STATES.

No. 321–52.

United States Court of Claims.
July 12, 1956.

Mason G. Kassel, New York City, for plaintiff. Harry J. Rudick and Lord, Day & Lord, New York City, were on the briefs.

Kurt W. Melchior, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues to recover income taxes collected from it for its fiscal years 1949 and 1950, and income and excess profits taxes for its fiscal year 1951. It claims that it was entitled to exemption from these taxes because its income was devoted to the benefit of New York University, an admittedly qualified educational institution.

Two Knapp brothers were the owners of all the stock of Knapp Brothers, Inc. which for many years had, in conjunction with subsidiaries owned by it, been engaged in the business of manufacturing and selling men's shoes. In May or June of 1947 a representative of the Knapps went to Mr. John Gerdes, a prominent alumnus and general counsel of New York University, to ask if he and his associates would be interested in buying the Knapp business for the benefit of New York University. Many conferences were held with Mr. Gerdes and many financial statements were submitted to him. The company was having a very prosperous year in 1947, because O. P. A. restrictions and other Government controls had been lifted and new manufacturing plants had been acquired and were getting into full production.

Mr. Gerdes would not consider the purchase until the earnings for the full year 1947 were known. Early in 1948 that information was available and Mr. Gerdes concluded that the business had a promising future. The Knapps asked $5,100,000 for the business. Mr. Gerdes studied the financial history of the company for prior years and for 1947. For 1947 the company had a net profit before Federal income taxes of $1,461,139 and after taxes of $908,792. That year was by far the most profitable year in the company's history. Mr. Gerdes apparently thought, from his study of that history, that the 1947 experience would probably be repeated in subsequent years.

Mr. Gerdes applied several different methods of determining value. He was a specialist in the field of corporate finance and reorganization, and applied his expert knowledge to the problem of the Knapp purchase. He thought that the national economy would continue to improve after 1947 and that the Knapp enterprise was well situated to grow with the economy. As a result of his study, he concluded that $5,100,000 was a fair price for the business.

In March 1948, Mr. Gerdes and two of his law partners organized the plaintiff corporation, Knapp Brothers Shoe Manufacturing Corporation, a Delaware corporation. It had a capital of $1,000, the ten $100 shares being divided between him and his two associates. The certificate of incorporation of the plaintiff corporation stated that it was organized exclusively for charitable, scientific, literary and/or educational purposes, and that no part of its income or property should enure to the benefit of anyone other than New York University; that no stockholder should be entitled to dividends on his shares.

Before the organization of the plaintiff corporation, Mr. Gerdes had ascertained that the new company could borrow $918,000 from the First National Bank of Boston, for its down payment to the Knapps. The agreement to purchase the property was closed, the down payment was made, and collateral mortgage notes due 20 years from date, with interest at three percent per annum, secured by a mortgage on all the physical assets of the business were given the Knapps for the balance of the purchase price.

As a part of the purchase transaction, a ten-year employment contract was made with the Knapp brothers. The employment contract was terminable at the option of the plaintiff after it had paid off the collateral mortgage notes. The salaries provided in the employment contract were reasonable.

The purchase turned out to be immediately and spectacularly advantageous to the purchaser. Within a little more than a year the plaintiff had paid its bank loan of $918,000 and by December 26, 1951, it had paid all of its debt to the Knapps, with interest. It had also paid its Federal taxes, though it denied liability for

them and made claim for their refund. During the tax years in question it made no cash contribution to New York University, though, under its arrangement with the Knapps, it was free to use a considerable part of its income as it pleased. Instead, it paid its debts.

Section 101 of the Internal Revenue Code of 1949, 26 U.S.C. (1952 Ed.) § 101 says:

"Sec. 101. Exemptions from tax on corporations.

" * * * the following organizations shall be exempt from taxation under this chapter—

\* \* \* \* \* \*

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. \* \*"

By section 454 of the Internal Revenue Code of 1939, as added by section 101 of the Excess Profits Tax Act of 1950, c. 1199, 64 Stat. 1137, 26 U.S.C.A. § 454, corporations exempt from income tax under section 101, above quoted, were exempted from excess profits taxes.

There was litigation as to whether section 101(6), above quoted, granted exemption to a corporation which engaged in a regular commercial business, even though its income was devoted exclusively to one of the purposes named in the statute. In C. F. Mueller Co. v. Commissioner, 3 Cir., 190 F.2d 120, Sico Co. v. United States, 102 F.Supp. 197, 121 Ct. Cl. 373, and Southeastern Fair Ass'n v. United States, 52 F.Supp. 219, 100 Ct.Cl. 216, that question was answered in the affirmative. Contra, United States v. Community Services Inc., 4 Cir., 189 F. 2d 421.

The exemption for such enterprises was eliminated by section 301(b) Title III, of the Revenue Act of 1950, 64 Stat. at page 953, 26 U.S.C. (1952 Ed.) § 101 (12) (B) (ii). But Congress, in section 601 of the Revenue Act of 1951, 65 Stat. 452, 562, 26 U.S.C. (1952 Ed.) § 101 note, 26 U.S.C.A. Int.Rev.Acts, page 400, provided:

"Sec. 601. Exemption of Certain Organizations From Income Tax for Prior Taxable Years.

"Section 302 of the Revenue Act of 1950 (relating to exemption of certain organizations for past years) is amended by adding at the end thereof the following new subsection:

" '(d) *Profits inuring to the benefit of certain educational organizations or hospitals.*—For any taxable year beginning prior to January 1, 1951, an organization operated for the primary purpose of carrying on a trade or business for profit, no part of the net earnings of which inures to the benefit of any private shareholder or individual and all of the net earnings of which inure to the benefit of any educational organization which normally maintains a regular faculty and curriculum and normally has a regularly organized body of pupils or students in attendance at the place where its educational activities are regularly carried on, or to the benefit of a hospital, or an institution for the rehabilitation of physically handicapped persons, which maintains or is building for proper maintenance a hospital or institution staffed or to be staffed by qualified professional persons for the treatment of the sick and/or the rehabilitation of the physically handicapped, shall not be denied exemption from taxation under section 101 of the Internal Revenue Code on the ground that it is carrying on a trade or business for profit. The determination as to whether an organization other than one described in this subsection is exempt under section 101 of the Internal Revenue Code from taxation

for any taxable year beginning before January 1, 1951, shall be made as if this subsection and section 301 (b) of this Act had not been enacted and without inferences drawn from the fact that this subsection and the amendment made by section 301(b) are not expressly made applicable with respect to taxable years beginning before January 1, 1951."

The plaintiff urges, of course, that this statute fits its situation exactly.

■ The Government urges that the plaintiff was not organized and operated exclusively for educational purposes during the years in suit. It says that the plaintiff's income went to the Knapps during those years, and none of it went to the University. But the payment of the plaintiff's debt to the Knapps added, dollar for dollar, to the assets of the University. The fact that the money was saved, and not currently spent, is immaterial.

■ The Government says that the plaintiff paid too much for the property; that therefore it was not an arms-length purchase, but an arrangement whereby the Knapps, looking forward to inheritance taxes and assets difficult to liquidate, were ridding themselves of a burdensome property; that the plaintiff, having no assets, had nothing to lose by entering into the arrangement. The contention that the plaintiff paid too much for the property is obviously not a teaching of hindsight. As we have seen, the purchase was a great bargain. There was no recognized economic principle that business would necessarily be worse after 1947 than in that year. There were special elements in the situation of this business that indicated, rightly as it turned out, that it would maintain or exceed the 1947 level of profit.

When the Knapps sold to the plaintiff, they ceased to be the owners of the business, and were interested in it only as secured creditors. If it had turned out that the plaintiff could not pay for it, the Knapps would have, by foreclosure, again become the owners. But until that should happen, the plaintiff owned and controlled the enterprise, and used the income to acquire assets for the University. Section 601, quoted above, is applicable, and the plaintiff is entitled to the exemptions claimed.

The plaintiff may have a judgment for $2,673,770.08,[1] with interest as provided by law.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.

1. As amended July 17, 1956.