**FIRST NATIONAL BANK OF OMAHA,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. 02569.

United States District Court
D. Nebraska.

Nov. 8, 1967.

William E. Morrow, Jr., of Miller, Morrow & Woodward, Omaha, Neb., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., Jerome Fink, Sheldon C. Glass, Attys., Dept. of Justice, Washington, D. C., and Russell J. Blumenthal Asst. U. S. Atty., Omaha, Neb., for defendant.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This is an action for recovery of federal income taxes assessed by the Internal Revenue Service [IRS] and paid by the plaintiff, First National Bank of Omaha. [Bank]. The jurisdiction of the Court has been invoked under 28 U.S. C. § 1346[a] [1].

In 1961 and 1962 the Bank listed on its income tax forms business deductions for entertainment of $992.06 and $2,-720.16 respectively for dinner parties given at a local Country Club. The IRS, in the course of its audit, disallowed the deductions in question. They contend the expenses were of a personal nature to the Bank's officers, not deductible business expenses of the Bank. Plaintiff Bank contests the IRS findings and claims the expenses are deductible as "ordinary and necessary" business expenses pursuant to 26 U.S.C. § 162[a]. That statute reads in part as follows:

"There shall be allowed as a deduction all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

■■ The burden of proof is upon the taxpayer to show he is entitled to a refund. Roybark v. United States, 104 F.Supp. 759 [S.D.Calif.1952], affirmed 218 F.2d 164 [C.A.9th 1954]; Forbes v. Hassett, 124 F.2d 925 [C.A.1st 1942]. Therefore, plaintiff must present sufficient evidence whereby the Court may find the expenses were first of all for business purposes and secondly, ordinary and necessary in nature and amount. We find the plaintiff has met this burden and is entitled to recovery.

The evidence is uncontested that in 1961 the President of the Bank, Mr. Davis, co-hosted a dinner party in honor of a long-time personal friend and significant Bank client. The party was prompted by a major social event in Nebraska. The 1962 dinner party, though involving a different guest of honor, was brought about by the same annual social event. Messrs. Davis and Lauritzen, President and Senior Vice-President of the Bank, co-hosted this party. The guest of honor was a friend of both the Bank and the co-hosts.

■ In considering the evidence presented the Court turns first to the question of whether the expenses were made primarily in pursuit of business or social purposes. The answer to that question turns upon the particular facts and circumstances found to exist in this

case. A business expense is sufficiently proved within the meaning of 26 U.S.C. § 162[a] if there are evident business ends to be served and an intention to serve them appears adequately from the record. Bennett's Travel Bureau, Inc., 29 T.C. 350 [1957]; Vol. 4A, Mertens, Law of Federal Income Taxation, § 25.88 at 318 [rev. 1966]. A valid test to apply to the facts in order to determine whether the expenditures were for business is whether the activity engaged in at the time in question was a part of a projected profit making scheme, entered into and carried on in good faith. Vol. 4A, Mertens, Law of Federal Income Taxation, § 25.95, at 350 [rev. 1966]. Evidence at trial established that the Bank had in recent years launched an extensive program to promote its relationship with present and potential customers. A new business department was organized and supervised by Mr. Lauritzen, Senior Vice-President. The department first used mass media advertising to place the Bank's name in front of the majority of the community. Statistical studies, however, revealed to the Bank that over fifty percent of its business was being done with less than one-half of one percent of its clients, approximately five hundred. The plaintiff then became aware that, while the mass media advertising was having a favorable impact, it was not reaching its more important clients. Mr. Lauritzen testified that the Bank then shifted the emphasis of its promotional activities, directing most of its efforts toward engratiating itself with its present top five hundred clients and prospective clients in the upper echelon of the financial community. For want of a better term, the Court will refer to the top people as key clients or key people hereinafter. As part of the Bank's promotional activities in reaching these key people, its officers are expected to make drop-in calls on the way to and from work to become acquainted with businessmen. It was emphasized, however, that the Bank has found its officers often rebuffed by key people. As could be anticipated by the Court,

plaintiff felt that these key people were too absorbed in important matters to give freely of their time. The Bank contends that they have experienced the same difficulty in getting them to attend activities sponsored in the Bank's name. In light of such findings plaintiff has resorted to more subtle ways to approach key people. It has encouraged its officers to entertain present and potential key clients privately when suitable occasions can be found as an excuse to do so. The Bank relies on the premise that while it may not be able to reach key people by business-sponsored events, the nurturing of personal friendships between its officers and key people will create a favorable business climate. Plaintiff cited several instances in which it has knowingly benefited from social relationships intentionally developed by its officers with key people. Plaintiff contends that the dinner parties in question were of the same nature; that the social event behind the dinners provided the necessary excuse to invite and become better acquainted with key clients and other key people. Charts were introduced into evidence to show that the Bank's business growth has paralleled its increased promotional activities. Under the circumstances, it appears reasonable that the Bank feels promotional activities such as those in question have been instrumental to its success. The Court's attention is also drawn to the manner in which guests lists for the dinners were compiled. In both instances the hosts selected key clients from a Bank list as well as a few personal friends compatible with the guest of honor, close friends and relatives of the honored guest and those whom protocol of the event dictated should be present. We do not think the defendant would contend that the motives prompting the entertainment could remain very subtle if all of the guests were business prospects. Nor could a party given for such a social event be blatantly labeled business without affronting most of those invited. The Bank observed that if it had sent the invitations in its own name, that is,

**908**

placed a business tag on the evening, it would have defeated its attempt to create an opportunity for its officers to develop personal relationships with those invited. While the Court looks on such circuitous routes to reach clients with considerable suspicion, it appreciates that there are times when a more direct approach will not be successful. The present situation appears to be of such a nature. In light of the circumstances, we find that the expenses were for activities carried on in good faith as part of a profit-making scheme. Therefore, they are business expenses within the meaning of the Code. It is immaterial that the plaintiff's officers also received some personal benefit from the dinners. Vol. 4A, Id., § 2589, at 323.

It remains for the Court to determine whether the expenditures in question were "ordinary and necessary". Many cases have been published construing the meaning of these words as used in 26 U.S.C. § 162[a]. However, since each of these cases turns on its own particular facts and circumstances, it would be an impossible task to harmonize their findings. In this area the statutory standard tends to follow normal business practice. The words "ordinary and necessary" only become truly meaningful when the facts and circumstances of the particular case are viewed through a common sense test such as: "Whether a hard-headed businessman would have incurred the expense under like circumstances." General Bancshares v. Commissioner of Internal Revenue, 326 F.2d 712 [C.A.8th, 1964]; Vol. 4A Mertens, Law of Federal Income Taxation, § 25.09 at 50 [rev. 1966]; also see Canton Cotton Mills v. United States, 94 F.Supp. 561, 119 Ct.Cl. 24 [1951]. We do not think it is unreasonable for an aggressive businessman to resort to private entertainment of customers when his efforts to reach them through more direct methods have failed. In Schmidlapp v. Commissioner of Internal Revenue, 96 F.2d 680, 681, 118 A.L.R. 297 [C.A.2d 1938] private entertainment of

potential clients by an officer of a bank was deductible as a business expense. Judge Learned Hand speaking for the court said:

"The taxpayer was a vice-president of the Chase National Bank of New York, which expected that as a part of his duties he would entertain at his own expense visitors whose favor the bank desired; just as some manufacturers entertain the buyers of mercantile houses to induce their patronage. * * * If proved, these outlays were, however, deductible * * * so far as they were to drum up business for the bank, though it was proper to be extremely suspicious as to how far that was their purpose."

Another test often used to determine whether the expenses within a particular case are considered ordinary pursuant to the code is:

"Whether the deductions were made for sound and normal business expenditures in nature and amount as determined by general commercial standards." Byers v. C.I.R., 199 F.2d 273 [C.A.8th 1952].

The fact that the Bank suggests that its promotional efforts are somewhat different than those used by its competitors should not suggest that the expenses are not ordinary. While other local banks may not have entertained in an identical manner, it would not be unusual for large businesses in the community to seek out key people in a similar manner. One would have to close his eyes to the realities of life to contend that personal friendships seldom promote business dealings. An expense is ordinary if it is not unusual in the commercial community of which the taxpayer is a part. It was pointed out in Poletti v. C.I.R., 330 F.2d 818 [C.A. 8th, 1964]:

"While success of a business promotion scheme is not a conclusive test of ordinary and necessary business expense, on the other hand, one should

not be penalized taxwise for his business ingenuity in utilizing advertising techniques which do not conform to the practices of one whom he is naturally trying to surpass in profits. It would be a hard rule, not in keeping with our free enterprise system, which in effect forbade a businessman from employing nonconventional advertising methods because resultant expenses were non-deductible. Certainly, Congress did not intend § 162[a] to have the effect of confining business advertising and promotion to the stereotyped pattern that might be set by unimaginative competitors in the taxpayer's business locale."

In Duffy v. Lethert, 63–1 U.S.Tax Cas. ¶ 9442 [D.C.Minn.1963], the district court said:

"Some discretion must be left to the taxpayer in deciding what kinds of advertising and promotion are necessary to obtain and hold business.

 Courts are in agreement that corporate expenditures are sufficiently necessary within the meaning of section 162[a] of the Code if they are appropriate and helpful to the taxpayer's business. The burden is on the taxpayer to demonstrate that the payment was intended to result in the inurement of a business benefit. Interstate Drop Forge Co. v. C.I.R., 326 F.2d 743 [C.A. 7th 1964]. We find the plaintiff has met this burden. When proof of motivations and requirements which prompted the taxpayer to conclude that the payments were necessary to his business and the expenditures appear helpful, the Court is slow to override the taxpayer's judgment. Cravens v. C.I.R., 272 F.2d 895 [C.A.10th 1959].

 Where business expenses are found to be ordinary and necessary they are generally fully deductible under 26 U.S.C. 162[a]. Under the facts and circumstances of this case the expenses appear reasonable. As was mentioned in the 1962 Code and Admin.News at p.

3327 as the reason for enacting 26 U.S.C. Section 274 for tax years following 1962:

"Under present law, [26 U.S.C. section 162] where a business purpose, however slight, exists, then the entertainment expenses generally are fully deductible * * *."

Though a new standard for deductibility of business expenses is controlling for tax years after December 31, 1962, it does not affect this case where expenditures were for activities prior to that date. Accordingly, the relief sought by the plaintiff, First National Bank of Omaha, is granted.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52[a] of the Federal Rules of Civil Procedure. Counsel for the plaintiff will prepare and submit an appropriate order of judgment within fifteen [15] days.