**ST. PETERSBURG BANK & TRUST COMPANY, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 71-425.**

United States District Court, M. D. Florida. Tampa Division.

Aug. 27, 1973.

Michel G. Emmanuel, Michael D. Annis, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for plaintiff.

Scott P. Crampton, Asst. Atty. Gen., Jerome Fink, Daniel C. Perri, Attys., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

HODGES, District Judge.

St. Petersburg Bank & Trust Company (the Bank) instituted this suit pursuant to 28 U.S.C.A. § 1346(a)(1) for the recovery of income taxes paid by it as a result of a deficiency assessment made by the Commissioner of Internal Revenue for the tax years 1965 and 1966. The issue is the propriety of certain deductions made by the Bank for entertainment expenses during those years. The governing provisions of the Code are Sections 162 and 274, Internal Revenue Code of 1954, as amended (26 U.S.C.A. §§ 162 and 274).

The Bank was organized in 1955 by Mr. Hubert Rutland and others. Mr. Rutland, a well-known St. Petersburg businessman, is the controlling shareholder, president and chairman of the board of directors. From its inception the Bank has aggressively and successfully sought out business from large depositors, borrowers and settlors of trusts. Taking the view that competition in the banking industry is largely confined to the area of personal services and relationships, the Bank has consistently endeavored to project the image of a local institution offering friendly, efficient and personal services to local businessmen, governmental entities and residents. Its implementation of that concept has principally focused upon and emphasized the management position of Hubert Rutland, and virtually all of the Bank's public advertising has sought to exploit both his professinal and social reputation in the community.

The expenses in dispute were incurred as a result of certain cocktail and dinner parties held at the Rutland home in St. Petersburg, and certain dove shoots and barbecues held at the Rutland ranch in Manatee County, approximately 30 miles to the South and East of St. Petersburg. In 1965 there were two such parties or receptions in the Rutland home, and three dove shoots at the Rutland ranch. In 1966 there was one reception in the home, a second party at another location and four dove shoots at the ranch. Attendance at these functions was by invitation only, and the written invitations were issued in the names of Mr. and Mrs. Rutland. The number of guests varied from approximately 50 persons to as many as 250, and there was no outward indication to those in attendance that any of the affairs were sponsored by the Bank. The costs, however, were paid by the Bank with the apparent approbation of its board of directors. The guest lists were compiled so as to include customers or potential customers of the Bank, business leaders, public officials, persons of substantial wealth and others in a position to control large deposits or otherwise direct beneficial business to the Bank. In addition, a number of the Bank's officers and key employees were invited on each occasion. Most of these persons clearly understood that they were asked to attend only because they were Bank employees, and many were specifically instructed to circulate among the guests, pass out their business cards, and generally tout the services of the Bank while nurturing a personal rapport with established or potential customers. On several occasions the employees took advantage of the opportunity to discuss specific transactions, either pending or contemplated.

The evidence generally supports the conclusion that these parties enhanced the good will of the Bank, contributed to its substantial growth, and constituted a

shrewd and fully justifiable expenditure by the Bank or its board of directors in pursuit of economic success. As a result —and the Government at least tacitly conceded the point—such expenses would appear to be deductible as "ordinary and necessary" business expenses within the purview of Section 162 of the Code (26 U.S.C.A. § 162) as interpreted and applied through 1962. See First National Bank of Omaha v. United States, 276 F.Supp. 905 (D.Neb.1967). The ultimate issue in the case, therefore, is the proper construction to be made of Section 274 (26 U.S.C.A. § 274), and a determination as to whether the subject expenses meet the admittedly more stringent requirements of that provision.

Section 274 was added to the Code in 1962,[1] and its genesis is best described in the Senate Committee Report:[2]

"The Treasury brought to the attention of Congress that widespread abuses have developed through the use of the expense account. In his tax message to the Congress last year, the President stated his conviction that entertainment and related expenses, even though having a connection with the needs of business, confer substantial tax-free personal benefits on the recipients, and that in many instances deductions are obtained by disguising personal expenses as business expenses. He recommended that the cost of such business entertainment and the maintenance of entertainment facilities be disallowed in full as a tax deduction and that restrictions be imposed on the deductibility of business gifts and travel expenses.

"Much of the abuse described by the President can be traced to the broad judicial and administrative interpretation given to the term 'ordinary and necessary' which has resulted in many entertainment expenses being allowed as deductions where

their connection with a trade or business is quite remote. Under present laws, where a business purpose, however slight, exists, then the entertainment expenses generally are fully deductible if they are 'ordinary and necessary' business expenses.

"After careful consideration of the proposal, your committee has concluded that deductions for entertainment and traveling expenses and business gifts should be restricted to prevent abuses."

Congress thus resolved to make the law more restrictive in the area of business entertainment deductions, not by amendment of Section 162 governing business expenses in general, but by the passage of a new and separate provision dealing solely with items of entertainment. As it ultimately evolved and became enacted, Section 274(a)(1)(A) provides as follows:

"§ 274. Disallowance of certain entertainment, etc., expenses

(a) Entertainment, amusement, or recreation.—

(1) In general.—No deduction otherwise allowable under this chapter shall be allowed for any item—

(A) Activity.—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, . . . "

■ Careful reading of this provision discloses a rather curious dichotomy of

1. Revenue Act of 1962, Public Law 87–834, § 4; 76 Stat. 960.

2. S.Rep. No. 1881, 87th Cong., 2nd Sess. (1962); U.S.Code, Congressional and Administrative News, pp. 3304, 3327 (1962).

standards—"directly related" and "associated with." The statute clearly creates two classes of entertainment expenses which are measured by separate tests in determining deductibility. One class is general, the other is specific. Entertainment expense in general must be "directly related" to "the active conduct of the taxpayer's trade or business." On the other hand, in the case of an expense incurred for entertainment "directly preceding or following a substantial and bona fide business discussion," it need only be "associated with" the taxpayer's business in order to qualify for deduction.

The Bank contends, first, that on the peculiar facts of this case the expenses involved easily qualify under the "directly related" test and the Treasury Regulations expanding upon that standard. Secondly, and alternatively, it contends that even if the disputed expenses were not "directly related" to its business, they surely qualify under the less exacting "associated with" test. Inherent in the latter assertion is the added contention that the qualifying language —"preceding or following a substantial and bona fide business discussion"— does not mean that the business discussions and the entertainment cannot be in process simultaneously. To evaluate and resolve these issues it is necessary to examine the legislative history of the statute in depth and, to a lesser degree, the Treasury Regulations promulgated since its enactment.[3]

## I  LEGISLATIVE  HISTORY

As already noted, the purpose of Congress was to tighten the existing law and prevent abuses that had developed under Section 162. The President's recommendation was hard and tough (see Senate Report, *supra*), and the House acted accordingly. Its bill would have prevented any deduction for the cost of business entertainment or the maintenance of entertainment facilities in the absence of a clear showing that such expense was "directly related" to the "active conduct" of business. (H.Rep.No. 1447, 87th Cong. 2d Sess., 1962–3 Cum. Bull. 405, 423–430). The Senate was more reticent. It described its concern and its attenuating amendments of the House bill as follows:[4]

"The committee agrees that this abuse of the tax law should not be condoned, but on the other hand it does not believe that complete disallowance as recommended by the President is the proper solution to the problem. Rather, your committee is convinced that expenses incurred for valid business purposes should not be discouraged since such expenses serve to increase business income, which in turn produces additional tax revenues for the Treasury."

\*    \*    \*    \*    \*    \*

"The House bill provides rules which in general would: (1) disallow a deduction with respect to entertainment activities, except to the extent that the expense is directly related to the active conduct of a trade or business; (2) disallow a deduction with respect to entertainment facilities, unless the facility is used primarily for the furtherance of the taxpayer's trade or business and the expense is directly related to the active conduct of the trade or business; . . ."

\*    \*    \*    \*    \*    \*

"Your committee's bill to a considerable degree retains the basic struc-

---

3. This case is a clear example of the phenomenon that so frequently occurs in the study and practice of law, namely the surprising paucity of decisional authority dealing with a seemingly basic or fundamental question. Although the statute is now over 10 years old, only one recent decision has approached the issue at hand, and it is clearly distinguishable.

See Hippodrome Oldsmobile, Inc. v. United States, 474 F.2d 959 (6th Cir. 1973).

4. S.Rep. No. 1881, 87th Cong. 2d Sess. (1962) ; U.S.Code, Congressional and Administrative News, pp. 3304, 3327–3329 (1962).

ture of the House bill. However, the effect of the principal provision (the disallowing of a deduction for certain entertainment expenses) has been modified to permit the deduction of expenses for goodwill where a close association is established between the expense and the active conduct of a trade or business."

\*    \*    \*    \*    \*    \*

"To eliminate the harshness resulting from the House report, amendment of the language of the House bill is necessary. Despite amendment of the House bill your committee has made certain that entertainment expense abuses are eliminated. By your committee's amendment an alternative rule is added to the House bill under which expenses for entertainment, amusement, or recreation (with respect to both activities and facilities) also will be deductible to the extent that such expenses are associated with the active conduct of a trade or business. This new language will permit deduction of expenses for entertainment, amusement, or recreation incurred for the creation or maintenance of business goodwill without regard to whether a particular exception applies. However, this new language will apply only if the taxpayer demonstrates a clear business purpose and shows a reasonable expectation of deriving some income or other benefit to his business as a result of the expenditure. If he meets this test, the expenditure will be considered to be associated with the active conduct of his trade or business; otherwise, the expense will be disallowed under your committee's amendment."

In essence, the Senate disapproved the harshness of the House bill to the extent that no deduction would be allowed for general goodwill entertainment, and it opted for the middle ground between Section 162 and the House version of Section 274 so as to permit deduction of

such expenses so long as they were "associated with" the business and the taxpayer could show "a reasonable expectation of deriving some income" as a result of the expenditure. This was the posture of the bill, therefore, as it proceeded to consideration by the conference committee.

The report of the conference committee, and the language of the statute as ultimately enacted, make it abundantly clear that the view of the House prevailed, with one narrow exception. The report states: [5]

"Senate amendments Nos. 29, 30 and 31 inserted the words 'or associated with' after the words 'directly related to' each place they appeared in the new section 274(a)(1) as passed by the House.

"Under the conference agreement the House recedes on Senate amendment No. 29 *with an amendment* providing that deductions otherwise allowable under chapter 1 of the code shall not be allowed for any item with respect to an entertainment type activity 'unless the taxpayer establishes that the item was directly related to, or, *in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise),* that such item was associated with,' the active conduct of the taxpayer's trade or business. Under the conference agreement, the Senate recedes on amendment No. 30, and the House recedes on amendment No. 31 *with an amendment* conforming to the action on amendment No. 29.

"The rule of the House bill as described in the report of the Committee on Ways and Means is more strict than the 'or associated with' rule of the Senate amendment. The rule of the House bill would not allow deduction of expenditures for entertainment occurring under circumstances where

5.  H.Conf.Rep. No. 2508, 87th Cong., 2d Sess. (1962) ;  U.S.Code, Congressional

and Administrative News, pp. 3732, 3735–3736 (1962).

there is little or no possibility of conducting business affairs or carrying on negotiations or discussions relating thereto, such as where the group of persons entertained is large or the distractions substantial.

"It is the understanding of the conferees, both on the part of the House and the Senate, that the alternative Senate 'or associated with' test as described in the report of the Finance Committee would apply to certain entertaining primarily to encourage goodwill where the evidence of business connection is clear, whether or not business is actually transacted or discussed *during the entertainment.* The conference agreement would permit a deduction for the cost of an entertainment item, even though the item is not directly related to the active conduct of the taxpayer's trade or business, if the item is associated with it, *so long as the entertainment activity directly precedes or follows a substantial and bona fide business discussion.* The conditions under which an item is 'associated with' the active conduct of a trade or business are contained in the report of the Committee on Finance. The deductibility of other items of entertainment expense, as well as items with respect to facilities, would be governed by the rule of the House bill.

"Section 274(a) as agreed to by the conferees will allow as a deduction the cost of entertaining connected with what are primarily business meetings. For example, if the taxpayer conducts substantial negotiations with a group of business associates and that evening entertains the group and their wives at a restaurant, theater, concert, or sporting event, such entertainment expenses, if associated with the active conduct of the taxpayer's business, will be deductible even though the purpose of the entertainment is merely to promote goodwill in such business. Moreover, if a group of business associates with whom the taxpayer is conducting business meetings comes from out of town to the taxpayer's place of business to hold substantial business discussions, the entertainment of such business guests by the taxpayer the evening prior to the business discussions will be regarded as directly preceding the business discussions.

"Similarly, if in between, or in the evening after, business meetings at a convention, the taxpayer entertains his business associates or prospective customers attending such meetings (and their wives), such entertainment will be considered as directly preceding or following a business discussion." (Emphasis supplied)

In summary, and as the enacted statute shows, the Senate receded altogether with respect to Section 274(a)(1)(B), dealing with entertainment facilities, and the "directly related" test is the sole standard to be applied as to those items. Hippodrome Oldsmobile, Inc. v. United States, 474 F.2d 959 (6th Cir. 1973). The Senate's less stringent "associated with" test was retained in Section 274(a)(1)(A)—the provision at issue—but only after a compromise amendment which qualified and limited that test to those expense items "directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise)."

## II THE DIRECTLY RELATED TEST

The Treasury Regulations promulgated under Section 274 generally restate the sense of Congress as revealed by the committee reports. Thus, among other criteria not pertinent to this case, Section 1.274–2(c)(3)(i)–(iv) of the regulations (26 C.F.R.) establishes four separate requirements, all of which must be met for an entertainment item to qualify as a "directly related" expense. Subsection (i) set forth the first of these requirements as follows:

"(i) At the time the taxpayer made the entertainment expenditure (or committed himself to make the ex-

penditure), the taxpayer had more than a general expectation of deriving some income or other specific trade or business benefit (*other than the goodwill of the person or persons entertained*) at some indefinite future time from the making of the expenditure. A taxpayer, however, shall not be required to show that income or other business benefit actually resulted from each and every expenditure for which a deduction is claimed." (Emphasis supplied)

In addition, Section 1.274–2(c)(7) of the same regulation (26 C.F.R.) provides:

"(7) *Expenditures generally considered not directly related.* Expenditures for entertainment, even if connected with the taxpayer's trade or business, will generally be considered not directly related to the active conduct of the taxpayer's trade or business, if the entertainment occurred under circumstances where there was little or no possibility of engaging in the active conduct of trade or business. The following circumstances will generally be considered circumstances where there was little or no possibility of engaging in the active conduct of a trade or business:

(i) The taxpayer was not present;

(ii) The distractions were substantial, such as

(a) A meeting or discussion at night clubs, theatres, and sporting events, or *during essentially social gatherings such as cocktail parties,* . . ." (Emphasis supplied)

■ Thus, insofar as the "directly related" test is concerned, it seems manifest that the entertainment involved in this case fails to qualify. There can be no doubt that the parties hosted by the Rutlands were motivated primarily by business considerations and that the Bank was the ultimate beneficiary of their social efforts. Yet it is equally clear that the benefit enjoyed by the Bank was of the goodwill variety derived from a purely social setting and,

as such, was precisely the type of expense deduction that Congress intended to eliminate by way of the "directly related" test.

## III   THE ASSOCIATED WITH TEST

The above conclusions do not necessarily disqualify the expenses, however, under the "associated with" test. That test, as intended by the Senate, is sufficiently relaxed to accommodate and allow deduction of certain goodwill items. The regulations say (26 C.F.R. § 1.274–2(d)(2)):

"(2) *Associated entertainment defined.* Generally, any expenditure for entertainment, if it is otherwise allowable under chapter 1 of the Code, shall be considered associated with the active conduct of the taxpayer's trade or business if the taxpayer establishes that he had a clear business purpose in making the expenditure, such as to obtain new business or to encourage the continuation of an existing business relationship."

The "associated with" test is limited, nevertheless, by the express qualification, imposed in conference, that the expense must relate to an item "directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise)." Again echoing the views reflected in the conference committee report, *supra,* the regulations provide (26 C.F.R. § 1.274–2(d)(3)(ii)):

"(ii) *Directly preceding or following.* Entertainment which occurs on the same day as a substantial and bona fide business discussion (as defined in subdivision (i) of this subparagraph) will be considered to directly precede or follow such discussion. If the entertainment and the business discussion do not occur on the same day, the facts and circumstances of each case are to be considered, including the place, date and duration of the business discussion, whether the taxpayer or his business

associates are from out of town, and, if so, the date of arrival and departure, and the reasons the entertainment did not take place on the day of the business discussion. For example, if a group of business associates comes from out of town to the taxpayer's place of business to hold a substantial business discussion, the entertainment of such business guests and their wives on the evening prior to, or on the evening of the day following, the business discussion would generally be regarded as directly preceding or following such discussion."

■ Since the "associated with" test is, in effect, an exception and not a general rule, the applicability of the test to specific facts is best determined when it is examined in juxtaposition with the "directly related" test as the basic standard. Concerning cocktail or dinner parties and other affairs such as those involved in this case, all of which would normally be regarded as essentially social or entertaining in nature, deduction of the expense is generally permitted only if the stringent requirements of the "directly related" standard are met. The mere purpose of fostering good will is insufficient to show a direct relationship to the business. On the other hand, when such affairs are sponsored in conjunction with meetings or conferences during which substantial and bona fide business matters are discussed, the cost of entertaining the participants as a good will expense item will be deductible as "associated with" the business. Practical application of the test is best typified by the illustrative examples given in the Conference Report and the Regulations, i. e., the familiar situations in which business conferences are conducted by day and out of town participants are entertained by night.

■ Viewed in this way, the conclusion is inescapable that the Bank's disputed entertainment expenses also fail to satisfy the requirements of the "associated with" test. It is not even suggested by the Bank that the social gatherings were in any sense an adjunct of formal business meetings. Rather, the Bank insists that the "associated with" test should not be narrowly confined to those precise situations in which the entertainment literally "precedes" or "follows" substantial business discussions, and that expenses may still qualify for deduction under that less demanding test even though the business discussions are conducted during the course of a combined social/business function. And, to be sure, there is at least one passage in the Conference Report (quoted *supra*) which lends support to this contention.

On the facts of this case, however, that construction and application would tolerate if not invite a head-on collision between the two tests, and would result in a statutory paradox. If the "associated with" test was intended to apply to cocktail and dinner parties, or dove shoots and barbecues merely because some business is discussed and good will is promoted, to what type of entertainment expense would the more demanding "directly related" test ever be applicable? Further exploration of that question here would require an indulgence in conjecture concerning potential factual situations not yet presented and unnecessary to decide. The future may well yield a case in which the "associated with" standard might be applied in the manner suggested by the Bank. Suffice it to say, however, that to bring the present expenses within the scope of that test would necessitate an unwarranted expansion of its limited area at the expense of the primary "directly related" test and the field it occupies.

The Clerk is directed to enter judgment in favor of the Defendant, dismissing the complaint with costs to be assessed according to law.