ARTHUR I. FIXLER and RUTH C. FIXLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fixler v. Commissioner
Docket No. 6572-77.
United States Tax Court
T.C. Memo 1978-423; 1978 Tax Ct. Memo LEXIS 93; 37 T.C.M. (CCH) 1753; T.C.M. (RIA) 78423; October 19, 1978, Filed Arthur I. Fixler, pro se. Charles W. Maurer, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Charles R. Johnston pursuant to the provisions of section 7456(c), Internal Revenue Code *94 of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV. [1] The Court agrees with and adopts the opinion of Special Trial Judge Charles R. Johnston which is set forth below. OPINION OF SPECIAL TRIAL JUDGE JOHNSTON, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1975 in the amount of $ 2,240.32. Concessions having been made, the issues for decision are: (1) whether petitioners are entitled to deduct under section 162 additional entertainment expenses in the amount of $ 3,325.00; (2) whether the entertainment expenses incurred were directly related to the active conduct of petitioners' trade or business or associated therewith within the requirements of section 274; and (3) whether petitioners are entitled to deduct under section 170 additional charitable contributions in the amount of $ 794.00. FINDINGS OF FACT Some of the facts have been stipulated and those facts have been so found. The stipulation of facts, together with *95 the exhibits attached thereto, are incorporated herein by this reference. At the time the petition herein was filed, petitioners resided in Cranston, Rhode Island. Petitioners, prior to 1972, resided in Baldwin, Long Island, New York. About January 17, 1972, Arthur was employed by the accounting firm of Laventhol & Horwath at their offices in Providence, Rhode Island. Petitioners moved from Baldwin to Cranston, Rhode Island in the latter part of August 1972. On February 1, 1974, Arthur became a Principal in Laventhal & Horwath. The compensation of a Principal is based upon profits and losses of the firm and the number of participation units a Principal receives. The categories of participants in profits, death benefits and retirement benefits and insurance in the firm are: Principals, Senior Principals, Proprietary Partners and Non-Proprietary Partners, and participation and benefits vary among them. The firm recognizes that a Principal incurs expenditures which will not be reimbursable by the firm. On February 6, 1976, Arthur became a Senior Principal in the firm. On December 5, 1975, petitioners held a Bar Mitzvah for their son David, whose 13th birthday was December 12, 1975, at *96 Temple Beth Torah. Following the ceremony, the petitioners held a party at the Providence Marriott Hotel. One hundred and fifty-four persons attended the Bar Mitzvah party, including fifty-two members of petitioners' families, thirty-four social friends and sixty-seven business and professional associates. The petitioners did not engage in any substantial business meetings, negotiations, discussions, or other bona fide business transactions with any of the guests attending the party, either during the party or directly preceding or following it. Petitioners incurred the following expenses in connection with the Bar Mitzvah party: banquet facilities, catering and bar, $ 3,584.17; table decorations and corsages, $ 283.38; and orchestra, $ 350.00, all of which amount to a total of $ 4,217.55. Petitioners also entertained at home clients of the accounting firm and associates, or attorneys acquainted with Arthur. They estimated that they entertained such persons about 10 to 15 times during the taxable year and that the expense of such entertainments would run anywhere "from $ 15.00, $ 20.00, $ 25.00 in that range, depending * * * upon what" was served. Petitioners maintained *97 no diary or record of the time of the entertainment, the actual amounts expended, the nature of any business discussion at any time. Ruth kept a social calendar of dates which apparently was thrown away prior to trial. On their Federal income tax return for 1975 petitioners claimed an employee business expense deduction of $ 3,325 for entertainment not reimbursed as Principal in the firm. Of this amount, $ 1,800 was attributed to entertainment of business and professional associates attending the Bar Mitzvah party, and $ 1,525 was claimed for additional entertainment expense. Respondent contends that since the entertainment for which deduction is claimed was neither "directly related" to, nor "associated" with, the active conduct of Arthur's trade or business, section 274 prevents the deduction. OPINION Petitioners have stipulated that they did not engage in any substantial business meetings, negotiations or discussions, or other bona fide business transactions with any of the guests attending the Bar Mitzvah party, either during the party or directly preceding or following the party. The record shows the same situation prevailed with respect to home entertainment. Thus, *98 petitioners have failed to meet the requirements of Treas. Reg. section 1.274-2(c)(3) with respect to "directly related" entertainment and of Treas. Reg. section 1.274-2(d) with respect to "associated" entertainment. Consequently, petitioners are not entitled to deduct the $ 1,800.00 claimed as Bar Mitzvah entertainment expenses. It is clear that the Bar Mitzvah was a personal social affair for which deductions are not allowed. Leon v. Commissioner,T. C. Memo. 1978-367; St. Petersburg Bank & Trust Co. v. United States,362 F. Supp. 674 (MD Fla. 1973) aff'd. by 5th Cir. Oct. 30, 1974 in unpublished opinion, cert. den. 423 U.S. 834 (1975); Brecker v. Commissioner,T.C. Memo. 1972-61; Haverhill Shoe Novelty Co. v. Commissioner,15 T.C. 517 (1950); Chapman v. Commissioner,48 T.C. 358 (1967). Petitioners' evidence in support of the $ 1,525.00 claimed for additional entertainment expense falls far short of the requirements of section 274 and is likewise not an allowable expense. FINDINGS OF FACT Petitioner, Ruth C. Fixler, served *99 on the Board of Trustees in the Women's Division of the Jewish Federation of Rhode Island, Inc. in 1975 in educational and fund raising activities. She was also Co-Chairman of the Speaker's Bureau of the Federation, Women's Division, and a panelist on the Speaker's Bureau. Both petitioners were active in the Federation and Arthur served on the Board of Trustees, on fund raising committees, on allocation committees and on the Bureau of Jewish Education. As Co-Chairman, Ruth was in charge of getting panelists to appear before various community groups throughout Rhode Island. This involved extensive communications in writing and by telephone between Ruth, speakers, panelists and others with respect to each speaking engagement. In addition, she was involved in board meetings and training programs for people working in the community in that year. The meeting of the Federation would be held at its office in Providence for the most part. Other meetings would be held in the homes of people in various communities. The speaking engagements were held in Westerly, Newport, Pawtucket, Providence, Cranston and other unspecified places in Rhode Island. The round trip distance from petitioners' *100 residence to Federation headquarters in Providence was about 22 miles. Petitioner made about three or four trips a week to visit the headquarters office during the year. Ruth kept no records but estimated that other travel on behalf of the Federation throughout the state to be "upwards of 1,500" miles. Ruth also estimated her telephone and postal expenses connected with her work to be "a minimum of $ 25.00 to $ 30.00." Ruth also estimated that she incurred out-of-pocket luncheon expenses in connection with meetings at petitioners' home of "maybe $ 5.00" for each such luncheon. The meetings were held "twice a week, once or twice a week, during" the busy part of the year. Ruth did not maintain a diary recording the dates and places of meetings attended. She scribbled some information on her calendar and then "threw the calendar out." She did not keep gasoline receipts or trip logs in connection with her trips. In connection with his duties on the allocation committee and as a member of the Bureau of Jewish Education, Arthur attended monthly meetings, executive meetings and allocation committee meetings. The allocation committee meetings were held in the period beginning March through *101 May 1975. Arthur estimated that he traveled 1,000 to 1,200 miles attending such meetings in the taxable year. He did not maintain a diary or list of his meetings or a log of his trips. Nor did he specifically retain gasoline receipts for such trips.
Petitioners on their Federal income tax return for 1975 claimed a deduction of $ 2,896 for cash contributions for which they had "receipts, cancelled checks or other written evidence" and other cash contributions of $ 72 to Temple Beth Torah for a total claimed charitable deduction of $ 2,968.00. Respondent allowed $ 2,174 of the claimed deductions and disallowed $ 794 on the grounds that petitioners had not established that the latter amount was a contribution or was paid. OPINION Petitioners have the burden of proving that the respondent's determination is incorrect. Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). The testimony of both petitioners on this issue is vague and general. Although their return as prepared indicates that the expenditures now claimed as deductions were supported by "receipts, cancelled checks or other written evidence" the record shows they *102 were not so supported. We are not inclined to treat such cavalier treatment of the requirements of the return lightly in the case of a taxpayer whose education and professional skills demonstrate, at best, gross carelessness in preparing the return. In addition, the regulations require that the information required to support a charitable contribution include the name of each organization to which a contribution was made as well as either the amount and date of each contribution or the total cash payments made during the year. Section 1.170A-1(a)(2), Income Tax Regs. We think no less is required with respect to unreimbursed expenditures made incident to the rendition of services to a charitable organization. Although the expenditures claimed range from about $ 560 to $ 794, depending on whether minimum or maximum estimates are being used, we are not inclined to accept either of these amounts. We are satisfied that petitioners are entitled to some allowance for such incidental expenditures. Cf. Louis v. Commissioner,T.C. Memo. 1966-204. Therefore, it becomes necessary to make some approximations under the rule of Cohan v. Commissioner,39 F. 2d 540 (2nd Cir. 1930). *103 Under the Cohan case rule, such approximations must bear heavily upon the taxpayer "whose inexactitudes are of his own making." Accordingly, we find petitioners incurred unreimbursed expenditures incident to rendition of services to the Jewish Federation of Rhode Island in the amount of $ 200.00. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.