JOHN E. GARDNER AND ALICEON GARDNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gardner v. Commissioner
Docket No. 21842-80.
United States Tax Court
T.C. Memo 1983-171; 1983 Tax Ct. Memo LEXIS 616; 45 T.C.M. (CCH) 1116; T.C.M. (RIA) 83171; March 30, 1983. *616 Held: Portion of basis allocable to improvements as of the time of acquisition of real property determined. Held further: Respondent's disallowance of claimed business entertainment expense deduction sustained. William F. Mason, Jr., for the petitioners. William L. Ringuette, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies of $1,833 and $51,513 in petitioners' Federal income taxes for the 1976 and 1977 taxable years, respectively. After concessions by the parties, the issues remaining for our determination are: (1) whether the depreciation and demolition loss deductions taken by petitioners in 1976 and 1977 were excessive because the portion of the purchase price allocated to the depreciable structures and improvements on the real properties in question did not accurately reflect their value when the properties were acquired; and (2) whether petitioners are entitled to a business entertainment expense deduction under sections 162[1] *617 and 274 in the amount of $3,752.41 for the cost of a party given in 1977. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. The petitioners, John E. Gardner and Aliceon Gardner are husband and wife. During the taxable years in question and at the time the instant petition was filed, they resided in Roanoke, Virginia. Petitioner John Gardner was a practicing dentist in the Roanoke area specializing in oral and maxillofacial surgery during the year in issue. Petitioners filed their Federal income tax returns for the taxable years 1976 and 1977 with the Internal Revenue Service in Memphis, Tennessee. In 1973, petitioners purchased a tract of real property located at 1515 Franklin Road in Roanoke at a total cost of $73,994. The tract which contained approximately 28,000 square feet consisted of four 50-feet lots, a large residence and several out buildings. The purchase contract dated February 8, 1973, allocated $50,000 of the $70,000 stated purchase price to the buildings and the remaining $20,000 to the land. [2] *618 Prior to petitioners' purchase, the house located on the 1515 Franklin Road property was an owner-occupied residence. Petitioners acquired the property for the purposes of deriving rental income and as an investment. On August 15, 1973, petitioners leased the 1515 Franklin Road property to a child guidance organization, Child Program Board, Inc., for a 3-year term at $7,200 per year. The lease was terminated by petitioners in the summer of 1975 for nonpayment of rent. The property suffered substantial damage during the time it was leased and occupied by the organization. The damage to the residence which occurred during the lease was so great that the property was unleaseable thereafter without extensive renovation. As a consequence, the property was not repaired and was never leased again by the petitioners. [3] *619 In 1974, petitioners acquired three parcels of real property located at 1501 Franklin Road, 1507 Franklin Road, and 350 Woods Avenue, all in the City of Roanoke at a total cost of $100,751. These three parcels consisted of land, residences and out buildings. Mr. Garnder first became interested in these three properties in October 1973, as a result of an inquiry by the Child Program Board, Inc. concerning their interest in leasing more space for their business operations and child guidance activities. The contract for purchase dated January 7, 1974, allocated $40,000 to the buildings at 1501 Franklin Road, $25,000 to the buildings at 1507 Franklin Road, $25,000 [4] to the buildings at 350 Woods Avenue and $10,000 to the land for all three parcels. All of the apartments located in the buildings on these three parcels were leased to various individuals at various times by petitioners until shortly before these buildings were demolished in 1977. The leases were usually for terms of a month or 30 days. The rents for the various apartments *620 ranged from $75 to $110 per month or 30-day term. On or about July 21, 1975, the petitioners acquired three additional parcels of real property located at 352-354 Woods Avenue, 358 Woods Avenue and 362-364 Woods Avenue, all in the city of Roanoke, Virginia, at a total cost of $76,469. These parcels also consisted of land, residences and out buildings. The purchase contract was silent as to an allocation of the purchase price between the land and the buildings. Petitioners made the following allocation based on their experience and the advice of their accountant: 352-354 Woods Avenue, $19,400 to the buildings; 358 Woods Avenue, $19,400 to the buildings; 362-364 Woods Avenue, $19,400 to the buildings. The remaining $18,269 of the purchase price was allocated to the land for all three parcels. All of the apartments located in the buildings on these three parcels of real estate were leased to various individuals at various times by the petitioners from the date of purchase in *621 1975 until shortly before the buildings were demolished in 1977. The leases were entered into usually for terms of a week or 1 month. The rents for the various apartments ranged from $20 per week to $112,50 per month. The petitioners had all seven properties inspected for woodboring insects at the time of acquisition and entered into contracts with an exterminating company for continuing protection against these insects. All of the subject properties are located in the same city block near downtown Roanoke. Petitioners claimed depreciation on these seven properties using the straight-line method. He assigned a useful life of 10 years to the 1515 Franklin Road property and useful lives of 15 years to the other six properties. Petitioners had the improvements on these properties [5] insured against loss from fire in the following amounts: 1501 Franklin Road
$46,000
1507 Franklin Road
30,000
350 Woods Avenue
30,000
352 Woods Avenue
20,000
358 Woods Avenue
20,000
364 Woods Avenue
20,000
The City of Roanoke, Virginia, Assessors' Office determined the following allocation of the land *622 and building values for 1976 real estate tax purposes. Fair
Market
1515
1501
1507
350
352-354
358
362-364
Value
Franklin
Franklin
Franklin
Woods
Woods
Woods
Woods
Land
$72,000
$24,000
$34,500
$11,500
$6,000
$6,000
$6,000
Buildings
1,000
1,000
6,000
6,000
6,000
6,000
4,000
Total
Value
73,000
25,000
40,500
17,500
12,000
12,000
10,000
Assessed
Value [6]
Land
28,800
9,600
13,800
4,600
2,400
2,400
2,400
Buildings
400
400
2,400
2,400
2,400
2,400
1,600
Total
29,200
10,000
16,200
7,000
4,800
4,800
4,000
Assessed
Value
Tax [7]
$1,007.40
$345.00
$558.88
$241.48
$165.60
$165.60
$138.00
In 1977, petitioners' 1974 and 1975 returns were audited by a Field Agent in the Roanoke, Virginia, office of the Internal Revenue Service. Pursuant to this audit petitioners consented to a deficiency generated by the following adjustments to their land and building basis allocations. Petitioners' Original
As Agreed
Property
Allocation
After 1977 Audit
Buildings
Land
Buildings
Land
1515 Franklin Rd.
$53,994 $20,000
$53,994 $20,000
1501 Franklin Rd.
40,000)
22,000)
1507 Franklin Rd.
25,000)
10,000
14,000)
50,000
350 Woods Ave.
25,751)
14,751)
352-354 Woods Ave.
19,400)
12,744)
358 Woods Ave.
19,400)
18,269
12,744)
38,235
362-364 Woods Ave.
19,400)
12,746)
Totals
$202,945 $48,269
$142,979 $108,235
The *623 adjusted allocations for these seven properties were made by the Field Agent after inspection of the buildings (i.e., the buildings were still standing at the time of the audit in 1977). The allocations as adjusted were used by petitioners in filing their income tax returns for 1976 and 1977, the years at issue in the instant proceeding. All seven properties were razed in 1977 and thus were not available for inspection at the time of the audit which resulted in the deficiencies at issue here. Petitioners are currently offering these properties (land only) for sale at a total asking price of $300,000. In determining the deficiencies here under review, respondent computed the value of the depreciable portions of the properties located at 1501, 1507, 1515 Franklin Road, and 350, 352-354, 358, and 362-364 Woods Avenue based upon the concept of interim use value. Respondent capitalized gross rents at 8 percent over the number of years the respective rental properties were offered for rent by the petitioners and assigned the present value of those rents (as of the time the properties were acquired) as the portion of the total cost of each parcel allocable to the improvements. This *624 method resulted in an allocation for depreciation and demolition purposes for the various properties as follows: Property
Land Value
Building Value
1515 Franklin Road
$52,825
$21,169
1501 Franklin Road)
6,144
1507 Franklin Road)
83,175
5,716
350 Woods Avenue)
5,716
352-354 Woods Avenue)
2,898
358 Woods Avenue)
60,831
8,213
362-364 Woods Avenue)
4,527
Total
$196,831
$54,383 According to respondent's determination of the original basis of each of the seven depreciable properties, the petitioners had accumulated depreciation, remaining basis for allowable depreciation and allowable demolition loss on the buildings at the end of 1975 as follows: 1977
1976
Allowable
Accumulated
Remaining
Allowable
Demolition
Property
Depreciation
Basis
Depreciation
Loss
1515 Franklin Road
$16,197
$ 4,972
$ 414
$ 4,558
1501 Franklin Road
2,211
3,933
303
3,630
1507 Franklin Road
1,407
4,309
331
3,978
350 Woods Avenue
1,482
4,234
326
3,908
352-354 Woods Avenue
426
2,472
165
2,307
358 Woods Avenue
426
7,787
519
7,268
362-364 Woods Avenue
427
4,100
273
3,827
Totals
$22,576
$31,807
$2,331
$29,476
On August 26, and 27, 1977, Dr. Gardner gave a cocktail party and invited at least 200 guests, which included primarily physicians, dentists, business acquaintances and their wives. Although *625 Dr. Gardner was not able to talk to every person at the party, he discussed specific business matters such as his method of treating temporomandibular joint syndrome and patient referrals with some of his quests. Petitioners incurred expenses totaling $3,752.41 in connection with this cocktail party. [8] and paid this amount on August 27, 1977.
In the notice of deficiency dated September 9, 1980, respondent determined that the seven properties were acquired with the intent to demolish the existing buildings but with the intention of using the properties for rental purposes for a period of time before demolition. At trial respondent conceded that petitioner's intention to demolish the buildings on the parcels of real property involved was formed subsequent to their acquisition. Respondent further determined that the original total bases of the depreciable portion of the seven properties was $54,383 and that the basis remaining as of January 1, 1976, was $31,807. Accordingly, respondent determined that the depreciation allowable in *626 1976 was $2,331 and that the demolition loss allowable in 1977 was $29,476. Respondent further determined that entertainment expenses incurred in 1977 in connection with the cocktail party given on August 26-27 were not allowable as a deduction because the requirements of sections 162 and 274 were not met. OPINION The first issue for our decision is to determine the amounts of the total purchase prices allocable to the depreciable portions of petitioner's properties located at 1515 Franklin Road, 1501 Franklin Road, 1507 Franklin Road, 350 Woods Avenue, 352-354 Woods Avenue, 358 Woods Avenue, and 362-364 Woods Avenue, all in the City of Roanoke, Virginia. Our allocation of basis to the improvements located on each of these seven parcels will determine the amount of depreciation allowable in 1976 and the amount of demolition loss allowable in 1977. [9] *627 The applicable rule of law is not in dispute. Where land and buildings are purchased for a lump sum the total purchase price must be allocated between the land and the improvements in the same ratio as the value of the depreciable property bears to the value of the entire property at the time of acquisition. Section 1.167(a)-5, Income Tax Regs.; Randolph Building Corp. v. Commissioner,67 T.C. 804, 807 (1977). Thus we must determine the fair market value of the components of the seven parcels at the time of their respective acquisitions. The question is purely one of fact and petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The simplicity of the above-stated rule of law belies the difficulty of its application. Valuation is "inherently imprecise and capable of resolution only by a Solomon-like pronouncement." Messing v. Commissioner,48 T.C. 502, 512 (1967). [10] It is impractical to assign *628 a precise weight to any one fact or to define its emphasis or importance relative to other facts. Couzens v. Commissioner,11 B.T.A. 1040, 1162 (1928). In addition, because each valuation case turns on its own unique set of facts previously decided valuation cases are of little assistance. Messing v. Commissioner,supra.
In Chesapeake & Ohio Ry. Co. v. Commissioner,64 T.C. 352, 391 (1975), we stated: As is the situation in virtually every valuation case, an elaborate discussion of the evidence and the relative weight of the various judgmental factors taken into account in reaching the final result is a fruitless exercise giving rise to a misleading inference that value is susceptible of determination with mathematical precision. In fact, it represents at most a practical judgment based upon all the materials that are properly before the Court.
Keeping in mind this self-admonition against both elaborate discourse upon the evidence and the assignment of relative *629 weights to individual facts, we offer the following brief discussion. The total basis for both the land and improvements on all seven properties is $251,214. Of this amount petitioners originally assigned $202,945 (80.8%) to the improvements and $48,269 (19.2%) to the land. The source of these allocations were the amounts assigned to these elements in the purchase contracts and the advice of petitioners' accountant. As a result of an audit of petitioners' 1974 and 1975 income tax returns in 1977 petitioners consented to a deficiency based rupon a reallocation of basis assigning $142,979 (56.9%) to the improvements and $108,235 (43.1%) to the underlying land. The instant deficiency arises as a result of an audit of petitioners' 1976 and 1977 income tax returns wherein respondent determined that the assignment of $54,383 (21.6%) to the improvements and $196,831 (78.4%) to the land is the appropriate allocation of petitioners' total basis in the seven properties. Petitioners contend here that the allocation of basis as agreed to as a result of the audit of their 1974 and 1975 returns is the correct valuation. Respondent redetermined the allocation between land and buildings on all *630 seven parcels based in part on values placed on said components by the Roanoke City Assessor. We do not believe that the local property tax assessor's valuations carry any probative value in this case. The City of Roanoke has no interest or financial stake in allocating the value of property between land and improvements. The tax collected is based solely on the total assessed value and is in no way dependent upon the relative value of the parts. Because the City had no incentive to allocate assessed value between the components on the basis of a reasonable judgment as to their relative worth, for our purposes the assessor's allocation is irrelevant. Respondent utilizes the concept of interim use value and computes the allocation between depreciable and nondepreciable value of each parcel by capitalizing gross rents from each parcel at 8 percent from the date of their respective purchases until the buildings were razed in 1977. Petitioners agree that the interim use value method is appropriate here but argue that two of the underlying assumptions upon which respondent's valuation was made are erroneous. As noted, respondent used as the period for capitalization the period between *631 the date of acquisition and the date of demolition and assumed a flat rental rate throughout. Petitioners argue that rental income should be increased 10 percent per year and that a 10-year life be used from the date of acquisition. [11] *632 After considering and weighing all the evidence in the record and bearing in mind the placement of the burden of proof, we find and hold that 50 percent of the total basis ($125,607) is allocable to the improvements on the seven properties as of the dates of acquisition and the remaining 50 percent is allocable to the land. For the convenience of the parties in the Rule 155 computation, we allocate the basis in the improvements among the seven properties as follows: Property
Land Value
Building Value
1515 Franklin Road
$ 30,000
$ 43,994
1501 Franklin Road)
20,772
1507 Franklin Road)
53,685
12,772
350 Woods Avenue)
13,522
352-354 Woods Avenue)
11,516
358 Woods Avenue)
41,922
11,516
362-364 Woods Avenue)
11,515
$125,607
$125,607
The final issue for our decision is whether petitioners are entitled to a business expense deduction of $3,752.41 for expenses incurred in connection with a cocktail party given by petitioners on August 26 and 27, 1977. We must decide whether the expenses sought to be deducted meet the requirements of sections 162 and 274. Section 162(a) provides for the *633 deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." It was stipulated that $3,752.41 was an expense paid in the 1977 taxable year. The question is whether that amount was an "ordinary and necessary" expense of petitioner's trade or business of being an oral and maxillofacial surgeon. Even if we determine that the entertainment expenses in issue meet the requirements of section 162[12] *634 we must also determine whether the additional stringent requirements of section 274 are met. [13]Section 274(a)(1)(A) provides in relevant part that no deduction shall be allowed with respect to an activity which constitutes entertainment "unless the taxpayer establishes that the item was directly related to * * * the active conduct of the taxpayer's trade or business." [14] *635 Section 1.274-2(a)(1)(i), Income Tax Regs.
Section 1.274-2(c)(3), Income Tax Regs., requires that for an expenditure to be considered "directly related" to the active conduct of the taxpayer's trade or business it must be shown that all of the following requirements are met: (i) "the taxpayer had more than a general expectation of deriving some income or other specific trade or business benefit (other than the goodwill of the person or persons entertained) at some indefinite future time from the making of the expenditure;" (ii) the taxpayer must have "actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, other than *636 entertainment, for the purpose of obtaining such income or other specific trade or business benefit;" (iii) "the principal character or aspect of the combined business and entertainment to which the expenditure related was the active conduct of the taxpayer's trade or business;" and (iv) the "expenditure was allocable to the taxpayer and a person or persons with whom the taxpayer engaged in the active conduct of trade or business during the entertainment." [15]
The stipulated facts and evidence presented shows that petitioners gave a cocktail party on August 26 and 27, 1977, for at least 200 people. The guest list consisted primarily of physicians, dentists, and other business acquaintances of Dr. Gardner and their spouses. Dr. Gardner testified that around the time of the party he was working in his dental practice approximately 14 hours a day, 5-7 days each week. Because of his busy schedule and consequent inability to confer with other dentists and medical doctors, Dr. Gardner was experiencing *637 difficulty in obtaining referrals of patients with temporomandibular joint syndrome, his area of expertise.He testified that during the course of the party he had discussions with at least six [16] doctors and dentists concerning medical problems they were having with such patients and was able to explain and promote his method of treatment. As a result of these discussions further referrals of patients were made to him. After consideration of all the evidence presented we conclude that the expenditures here in issue do not meet the strict requirements of section 274(a)(1)(A). We are unable to find that the entertainment of 200 people at a cocktail party was "directly related" to the active conduct of Dr. Gardner's dental practice within the meaning of the statute and respondent's regulations. Rather, we conclude that it was petitioners' *638 purpose merely to create goodwill among referring doctors, dentists, and their spouses. We note that respondent's regulations specifically mention a cocktail party as an example of an entertainment situation which generally will be considered not directly related to the active conduct of the taxpayer's trade or business because it is essentially a social gathering and there is little or no possibility of engaging in the active conduct of a trade or business because of the substantial distractions inherent in such form of entertainment. Section 1.274-2(c)(7)(ii)(a), Income Tax Regs. Clearly a large party such as was given by petitioners in this case does not lend itself to substantial business discussions. Dr. Gardner testified specifically concerning six persons with whom he had business discussions during the course of the party. While we have no doubt that these and probably other business discussions occurred during the course of the party and that they resulted in patient referrals, nevertheless we are unable to allow a business entertainment deduction for a party for 200 guests under the strictures imposed by section 274. Indeed, the very size of the party dooms the claimed *639 deduction to failure. Surely petitioner could not have expected to have had substantial business discussions with all or even most of those attending. Rather, the party has every appearance of a social gathering intended for the purpose of renewing acquaintances and enjoying a pleasant evening. Thus, even though the entertainment expenses incurred by the taxpayer were motivated by business considerations and the goodwill generated by the expenditures resulted in the referral of patients to Dr. Gardner, we are unable to find that the "principal character" of the cocktail party was the "active conduct of the taxpayer's trade or business" as required by section 1.274-2(c)(3)(iii). [17]
Accordingly, we sustain respondent's determination that the expenditures here in question are not deductible under section 274. Decision will be entered under Rule 155
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.
2. The discrepancy between the stipulated total cost of $73,994 and the purchase price of $70,000 stated in the sales contract is not explained but is probably attributable to closing costs. Petitioners initially allocated $53,994 of the cost to the buildings for the purpose of computing depreciation.
3. The petitioners commissioned a feasibility study of the 1515 Franklin Road residence after the termination of the Child Program Board, Inc. tenancy to determine whether the property would be suitable for an office building for Dr. Gardner's dental practice. Dr. Gardner determined that such conversion was not economically feasible.
4. The contract for purchase listed the total sales prices as $100,000. Petitioners initially allocated the additional $751 of the stipulated total cost of the three parcels to the buildings at 350 Woods Avenue.↩
5. There is no evidence in the record as to whether petitioners had fire insurance on the 1515 Franklin Road property.↩
6. The assessed value for Roanoke city tax purposes is 40 percent of the fair market value. ↩
7. The 1976 Roanoke city tax rate is $3.45 per $100 assessed valuation.↩
8. Although not entirely clear from the facts presented, it appears that there were actually two parties given on the successive evenings of August 26 and 27.↩
9. It may be helpful to note what is not in dispute in this case. There is no issue with respect to the following: (1) the total value of the land together with improvements; (2) the useful lives claimed for the improvements; (3) the method used by petitioners to compute depreciation. Although respondent determined as his primary position in the notice of deficiency that the seven properties were acquired with the intent to demolish the existing structures, at trial respondent conceded that such intent was formed subsequent to their acquisition.
10. As such, the issue is "more properly suited for the give and take of the settlement process than adjudication." Buffalo Tool & Die Mfg. Co. v. Commissioner,74 T.C. 441, 451 (1980); Messing v. Commissioner,48 T.C. 502↩ (1967).
11. We note that section 1.165-3(a)(2)(i), Income Tax Regs., provides in pertinent part: If the property is purchased with the intention of demolishing the buildings and the buildings are * * * held for the production of income before their demolition, a portion of the basis of the property may be allocated to such buildings and depreciated over the period during which they are * * * held.* * * In any event, the portion of the purchase price which may be allocated to the buildings shall not exceed the present value of the right to receive rentals from the buildings over the period of their intended use. (Emphasis added) Respondent conceded at trial that petitioners did not purchase the properties with the intention of demolishing the existing improvements. Therefore, we agree with petitioner that respondent's valuation is faulty because the period of capitalization of rents should not be determined by the actual length of time the properties were rented. The allocation of value between land and improvements must be made based upon the facts that existed at the time of purchase.
12. In order for an entertainment expense to be "ordinary and necessary" to the carrying on of a taxpayer's trade or business "[p]roof is required that the purpose of the expenditure was primarily business rather than social or personal, and that the business in which taxpayer is engaged benefited or was intended to be benefited thereby." Schulz v. Commissioner,16 T.C. 401, 405 (1951); Boehm v. Commissioner,35 B.T.A. 1106 (1937). However, because we hold that the requirements of section 274 are not met we need not decide whether the expenditure met the requirements of section 162↩. 13. Section 274 was added to the Code in 1962 (Revenue Act of 1962, Pub. L. 87-834, sec. 4; 76 Stat. 960, 974) to curb abuses of the use of business expense accounts for entertainment and related expenses. Section 274 is a disallowance provision and does not make deductible any expense which is disallowed under any other provision of the Code. Section 1.274-1, Income Tax Regs.; Andress v. Commissioner,51 T.C. 863, 866↩ (1969). 14. Petitioner does not argue that the entertainment at issue here preceded or followed a substantial and bona fide business discussion. Thus the expenditure must be "directly related" and not merely "associated with" the active conduct of petitioner's business. See section 274(a)(1)(A) and St. Petersburg Bank & Trust Co. v. United States,362 F. Supp. 674, 676-677 (M.D. Fla. 1973), affd. in an unpublished opinion (5th Cir. 1974), cert. cenied 423 U.S. 834 (1975). A third requirement for the deduction of entertainment expenses is that the substantiation and recordkeeping requirements of section 274(d) must be met. Section 1.274-5(b)(3), Income Tax Regs., requires the proof of the following elements of an entertainment expenditure: (1) Amount; (ii) Time; (iii) Place; (iv) Business Purpose; (v) Business Relationship. Respondent has conceded that only the first three elements have been adequately proved. However, our discussion of the requirements of section 274(a)↩ eliminates the need for a separate discussion of these substantiation requirements.
15. The amount of the deduction is limited to that portion of the expenditure directly related to the active conduct of the taxpayer's trade or business. Section 1.274-2(a)(1), Income Tax Regs.↩
16. Petitioner named six doctors with whom he discussed business during the party. He testified that there were other doctors he spoke to whose names he could not remember. He also stated that he spoke to many wives during the course of the party and that his experience showed that doctors' and dentists' wives were good sources of patient referrals.↩
17. See Childs v. Commissioner,T.C. Memo. 1981-519; Leon v. Commissioner,T.C. Memo. 1978-367↩.