AUTO ZAPPER & TOWING, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Auto Zapper & Towing, Inc.
Docket No. 7406-91
United States Tax Court
T.C. Memo 1992-662; 1992 Tax Ct. Memo LEXIS 702; 64 T.C.M. (CCH) 1316; November 16, 1992, Filed *702 Decision will be entered under Rule 155. For Petitioner: Chester A. Swart. For Respondent: Mary Kimmel. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) (3) and Rules 180-182. [1] Respondent determined a deficiency in petitioner's Federal income tax for the fiscal year ending May 31, 1988, in the amount of $ 2,388, and additions to tax of $ 119.40 under section 6653(a) (1)(A), and 50 percent of the interest due on the entire deficiency under section 6653(a)(1)(B). After concessions by respondent, the issues for decision are: (1) Whether petitioner may deduct, in accordance with the provisions of sections 162 and 274, the expenses of a trip to Las Vegas, Nevada; and (2) whether petitioner is liable for the additions to tax. Some of the facts have been stipulated *703 and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner's principal place of business was in Bell Gardens, California, at the time of the filing of the petition in this case. Petitioner bears the burden of showing that respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Auto Zapper & Towing, Inc. (Auto Zapper or petitioner), is a corporation primarily engaged in the business of repossessing automobiles, boats, and motorhomes. During the year at issue, petitioner's president and sole shareholder was William Posey. Petitioner, as a repossession company, receives most of its business from financial institutions such as banks, credit companies, and credit unions. These financial institutions monitor accounts and when a particular account becomes delinquent, they assign the repossession job to a repossession company. The employees of the financial institutions (hereafter referred to as collection contacts) are generally provided with a list of approved repossession companies, from which they may choose a repossession company to assign the job. *704 Thus, the success of petitioner, and other repossession companies, is contingent not only on the performance of its services, but also on the relationship between its employees and the financial institution's collection contacts. Therefore, it is common practice in the repossession industry to solicit the business of the various collection contacts by inviting them to social events. On one weekend during fiscal 1988, petitioner sponsored a trip to Las Vegas, Nevada, for the purpose of promoting its business. Petitioner hoped to further foster the good relations between its employees and the various collection contacts. Thus, petitioner chartered three buses to transport its employees and the invited collection contacts (plus spouses and/or guests) to and from Las Vegas. The buses left Los Angeles on Friday evening at approximately 7:30 and returned Sunday afternoon. Since the ride was approximately 5 hours, petitioner provided refreshments, such as soft drinks, alcohol, and snacks. During the bus ride to Las Vegas, petitioner's employees had an opportunity to mingle with the collection contacts, and find out whether petitioner's services were adequate, what could be done to *705 improve services, and their overall opinion of petitioner's performance. Twice during the trip, the buses stopped and petitioner's employees switched buses, so as to enable a broader opportunity for contact and communication. Once in Las Vegas, petitioner's employees and guests were free to do what they wanted to, as there was no schedule of activities or meetings. In fact, almost everyone on the trip spent a significant amount of time gambling. However, groups of people would meet for breakfast or dinner and discuss the repossession industry in general. In addition to the transportation, petitioner paid for a hotel room for each of its employees and the invited collection contacts. The return trip to Los Angeles on Sunday was not productive, as many passengers slept throughout the ride. Petitioner claimed a deduction of $ 9,286 for the trip to Las Vegas consisting of $ 4,109 for hotel rooms, $ 500 cash for the trip, $ 1,071 for American Express charges, $ 1,206 for refreshments, and $ 2,400 for the charter buses, all of which have been adequately substantiated. Mr. Posey testified that as a result of the trip, petitioner's business increased significantly. Mr. Boisclair, *706 a former field supervisor for the Bank of America's collection department, testified that, following the trip, his employees wanted to give the bulk of their repossession business to petitioner, if possible. Mr. Boisclair further testified that being entertained was common practice in the business and that other repossession companies also treated him to various outings. Respondent determined that petitioner was not entitled to deduct the cost of the trip to Las Vegas. In reaching this determination, respondent concluded that the trip was not an "ordinary and necessary" business expense within the meaning of section 162(a). Additionally, respondent contends that, even if such expenses are ordinary and necessary, they do not meet the requirements of section 274 in that (1) petitioner incurred the trip expenses primarily for goodwill, and (2) petitioner has not overcome the presumption set forth in section 1.274-2(c) (7), Income Tax Regs., that the setting was such that there was little or no possibility of engaging in the active conduct of petitioner's trade or business. Section 162(a) provides for the deduction of all the ordinary and necessary expenses paid or incurred during *707 the taxable year in carrying on any trade or business. "Ordinary" has been interpreted to mean that the expense must have a reasonably proximate relationship to the operation of the taxpayer's business. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). "Necessary" has been interpreted to mean that the expense must be appropriate or helpful to the trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966). The issue of whether the expenses are ordinary and necessary is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943); Walliser v. Commissioner, 72 T.C. 433, 437 (1979). We believe petitioner has demonstrated that the trip expenses were both "ordinary and necessary" within the meaning of section 162(a) and arose out of the conduct of petitioner's business. United Title Insurance Co. v. Commissioner, T.C. Memo. 1988-38. However, although the expenses are ordinary and necessary, they must also meet the stringent requirements of section 274. Section 274(a) (1)(A) provides that no deduction shall *708 be allowed with respect to an activity which constitutes entertainment unless the taxpayer establishes that the entertainment activity was either (1) "directly related to" the active conduct of the taxpayer's trade or business, or (2) in the case of entertainment directly preceding or following a substantial and bona fide business discussion, "associated with" the active conduct of the taxpayer's trade or business. Section 1.274-2(c) (3), Income Tax Regs., sets forth four requirements, all of which must be satisfied, for an entertainment expense to be "directly related" to the active conduct of the taxpayer's trade or business. As they relate to this case, petitioner must establish that at the time of the entertainment: (1) Petitioner had more than a general expectation of deriving some income or business benefit other than the goodwill of the person or persons entertained; (2) petitioner actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, other than entertainment, during the entertainment period; (3) the principal character or aspect of the combined business and entertainment to which the expenditure related was the active conduct *709 of business; and (4) the expenditure was allocable to petitioner and a person or persons with whom petitioner engaged in the active conduct of trade or business during the entertainment. Moreover, due to the location of the entertainment, where nonbusiness distractions are substantial, petitioner must overcome the presumption that such entertainment was not directly related to active conduct of petitioner's business. Sec. 1.274-2(c)(7), Income Tax Regs.
Based on this record, we conclude that petitioner did not meet the requirements set forth above. Although we do believe that the Las Vegas trip increased petitioner's business, the primary purpose of the trip was to promote goodwill towards petitioner's business by providing an opportunity for petitioner's employees to maintain good personal relations with the collection contacts which utilized the services of petitioner. See Walliser v. Commissioner, supra; St. Petersburg Bank & Trust Co. v. United States, 362 F. Supp. 674 (M.D. Fla. 1973), affd. without published opinion 503 F.2d 1402 (5th Cir. 1974). Moreover, although certainly some *710 business discussions occurred over the course of the weekend, they were informal and certainly not substantial. Petitioner did not have a meeting or seminar once in Las Vegas; rather, petitioner's representatives merely mingled and discussed business, in general, when given the opportunity. See Berkley Machine Works & Foundry Co. v. Commissioner, 623 F.2d 898 (4th Cir. 1980); Hippodrome Oldsmobile, Inc. v. United States, 474 F.2d 959 (6th Cir. 1973); cf. United Title Insurance Co. v. Commissioner, T.C. Memo. 1988-38. Therefore, the entertainment activity was not "directly related" to the active conduct of business. Nevertheless, a deduction for entertainment may be allowed if it is "associated with" the actual conduct of that taxpayer's business and such entertainment either precedes or follows substantial bona fide business discussions. Sec. 1.274-2(d), Income Tax Regs. There was no actual conduct of petitioner's business during the trip; i.e., no business was transacted. Petitioner would have us believe that the bus trip to and from Las Vegas was a "traveling round table discussion" *711 and that the bus was a "meeting room". The circumstances of this case do not compel a finding that some discussion on 1 day of a 3-day trip constitutes "substantial bona fide business discussions". To the contrary, although there was certainly some business discussion during the trip, such discussion was general and merely for the purpose of promoting good will. Wallisser v. Commissioner, supra; Thompson v. Commissioner, T.C. Memo. 1979-505. Therefore, petitioner has not satisfied the alternative requirement for deduction. Accordingly, we hold for respondent. Section 6653(a)(1)(A) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes an addition to tax of 50 percent of the interest due on that portion of an underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care of a reasonable and ordinarily prudent person under like circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner also has the burden of proof *712 on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). After due consideration of this record, we conclude that petitioner was not negligent. Accordingly, we hold for petitioner on the additions to tax. To reflect respondent's concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩